Approved: _____
JEFFREY C. COFFMAN
Assistant United States Attorney

Before:   THE HONORABLE PAUL E. DAVISON          21-MJ-3110
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA              **SEALED COMPLAINT**
                                   :
                                      Violations of 18 U.S.C.
     - v. -                        :  §§ 1001, 1028A, 1343, and
                                      1349
ALICIA AYERS,                      :
ANDREA AYERS, and
TRACI PROCTOR,                     :  COUNTY OF OFFENSES:
                                      WESTCHESTER
               Defendants.         :


- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

          PHILIP R. KEANE, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

          1.   From at least on or about June 22, 2020, up to and
including at least on or about July 9, 2020, in the Southern
District of New York and elsewhere, ALICIA AYERS, ANDREA AYERS,
and TRACI PROCTOR, the defendants, willfully and knowingly did
combine, conspire, confederate, and agree together and with each
other, and with others known and unknown, to commit wire fraud, in
violation of Title 18, United States Code, Section 1343.

          2.   It was a part and object of the conspiracy that ALICIA
AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, and others
known and unknown, knowingly and with the intent to defraud, having
devised and intending to devise a scheme and artifice to defraud,
and for obtaining money and property by means of false and

fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, agreed to obtain funds from the U.S. Small Business Administration ("SBA") through the SBA's Economic Injury Disaster Loan ("EIDL") Program, by means of false and fraudulent pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

3.    From at least on or about June 22, 2020, up to and including at least on or about July 9, 2020, in the Southern District of New York and elsewhere, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR engaged in a scheme to obtain funds from the SBA through the SBA's EIDL Program, by means of false and fraudulent pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York.

(Title 18, United States Code, Section 1343 and 2.)

## COUNT THREE
### (False Statements)

4.   From at least on or about June 22, 2020, up to and including at least on or about July 9, 2020, in the Southern District of New York and elsewhere, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully falsified, concealed and covered up by a trick, scheme and device a material fact, made a materially false, fictitious and fraudulent statement and representation, and made and used a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, to wit, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, made false and misleading statements to the SBA regarding, among other things, the existence of businesses, their dates of opening, their numbers of employees, and their gross revenues during the 12 months prior to the COVID-19 pandemic, for the purpose of obtaining, and assisting applicants to obtain, funds through the EIDL Program administered by the SBA.

(Title 18, United States Code, Section 1001(a)(2) and 2.)

## COUNT FOUR
### (Aggravated Identity Theft)

5.   From at least on or about June 22, 2020, up to and including at least on or about July 9, 2020, in the Southern District of New York and elsewhere, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, knowingly did transfer, possess, and use, and cause to transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR possessed and used the names and identities of applicants in connection with the submission of fraudulent EIDL applications to the SBA during and in relation to the conspiracy, wire fraud and false statements charges in Counts One through Three of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) and 2(a).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.   I am a Special Agent with the FBI.  I have been a Special Agent with the FBI for over eight years.  I am currently assigned to the Westchester Resident Agency White Collar and Public

Corruption Task Force Squad.  During the course of my career, I have participated in numerous criminal investigations, including investigations involving fraud, narcotics, and gang violence.  I am a case agent assigned to the current investigation.  In the course of my career, I have been the affiant on numerous complaints and search warrants.

7.    I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**Overview of the Fraudulent Conduct**

8.    Based on public utility records, SBA records, bank statements, and Optimum Online records, I know that:

a.    ANDREA AYERS, the defendant, resides at a home in Mount Vernon, New York ("Andrea Ayers's Mount Vernon Residence") with a relative ("Relative-1").

b.    ALICIA AYERS, the defendant, has resided part-time at Andrea Ayers's Mount Vernon Residence, and part time at a condominium in Stamford, Connecticut ("Alicia Ayers's Stamford Apartment").

c.    TRACI PROCTOR, the defendant, resides at an apartment in DeKalb County, Georgia ("Proctor's Georgia Residence").  Based on my review of the LinkedIn page of TRACI PROCTOR, I know that she reports having previously worked for the City of Mount Vernon from May 2008 to December 2011.

9.    From at least on or about June 22, 2020, up to and including at least on or about July 9, 2020, ALICIA AYERS, ANDREA AYERS, TRACI PROCTOR, the defendants, appear to have used the identities of approximately 300 other individuals (the "Applicants") to submit approximately 315 online applications to the SBA on behalf of businesses purportedly employing ten or more employees as of January 2020, seeking a total of over $3 million in SBA funds through the SBA's EIDL Program (the "EIDL Applications").  In connection with the EIDL Applications, ALICIA

AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, represented, and caused to be represented, to the SBA, among other things, that the Applicants were the owners of businesses with ten or more employees and specified gross revenues during the year prior to the COVID-19 pandemic.  In fact, however, as described below, the applications falsely reported the businesses' revenue and numbers of employees, and the vast majority of the purported businesses appear not to have existed at all.

10.   Based on the fraudulent EIDL Applications submitted and caused to be submitted to the SBA by ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, the SBA made advance payments of approximately $1,690,000 to the Applicants.  The Applicants often then kicked back a portion of the advance payments to ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR.

## Background on the SBA's EIDL Program

11.   Based on my training and experience, review of information from the SBA's website at: https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/economic-injury-disaster-loans, and review of information received from the SBA, I know that:

a.   The SBA is a federal agency of the Executive Branch that administers assistance to American small businesses. This assistance includes making direct loans to applicants through the EIDL Program.

b.   The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  Among other things, the CARES Act expanded the SBA's EIDL Program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020 and up to $150,000 beginning in or about May 2020, in order to provide vital economic support to help overcome the loss of revenue small businesses are experiencing due to COVID-19.  To qualify for an EIDL under the CARES Act, an applicant must have suffered "substantial economic injury" from COVID-19, based on a company's actual economic injury determined by the SBA.  EIDLs may be used for payroll and other costs as well as to cover increased costs due to supply chain interruption, to pay obligations that cannot be met due to revenue loss, and for other similar uses.

12.   The CARES Act also permitted applicants seeking a loan under the EIDL program to request and receive an advance of

approximately $1,000 per employee, for an amount up to $10,000, which the SBA has generally provided while the loan application was pending.  The advance was effectively a grant, as applicants were not required to repay any of the advanced amount.  In many cases, the SBA provided advances in connection with applications that the SBA later determined were ineligible for a loan.

13.  To qualify for an EIDL, applicants are required to submit applications to the SBA, generally through the SBA's website, wherein the applicant provides information including the business's:  name, EIN (or social security number for sole proprietorships), gross revenues and cost of goods for the prior year, address, email, date of establishment, number of employees as of January 31, 2020, and bank account information. The EIDL application also states that "If anyone assisted you in completing this application, whether you pay a fee for this service or not, that person must enter their information below," and includes fields for the name and contact information of anyone assisting the applicant to complete the application.  Applicants are required to certify under penalty of perjury that the information provided in the EIDL application is true and correct.

### The Fraudulent EIDL Applications

14. Based on records from the SBA, Comcast, Optimum Online and Verizon Wireless, I know the following:

a.  From on or about April 4, 2020, through on or about June 28, 2020, an Internet Protocol address ("IP address")[1] registered to Relative-1, at ANDREA AYERS'S Mount Vernon Residence ("Relative-1's IP Address"), was used to submit to the SBA approximately 64 EIDL applications for approximately 59 businesses. The first 17 applications, submitted from April 4, 2020 through June 21, 2020, reported that the businesses had fewer than ten employees as of January 2020.  The last 47 applications, submitted from June 22, 2020, through June 28, 2020 reported that the businesses had ten to 25 employees as of January 2020.

b.  From on or about June 23, 2020 through on or about June 29, 2020, an IP address registered to ALICIA AYERS, the defendant, at ALICIA AYERS'S Stamford Residence ("Alicia Ayers's IP Address"), was used to submit to the SBA approximately 55 EIDL applications for approximately 49 businesses.  All but one of these

---

[1] An IP address is a unique address that identifies a device on the Internet or a local network.

applications reported that the businesses had 11 to 16 employees as of January 2020.

c. From on or about June 22, 2020 through on or about July 9, 2020, an IP address registered to a medical center in DeKalb County, Georgia (the "Georgia Medical Practice") (the "Georgia Medical Practice's IP Address"), was used to submit to the SBA approximately 47 EIDL Applications for approximately 46 businesses. All but four of these applications reported that the businesses had ten to 12 employees as of January 2020.

d. From on or about June 28, 2020 through on or about July 9, 2020, seven other IP addresses were used to submit to the SBA approximately 106 EIDL Applications for approximately 106 businesses. The internet provider through which these IP addresses connected to the Internet is no longer able to provide subscriber records for these IP addresses for this time period. However, a publicly available IP address lookup tool, available at WhatisMyIPAddress.com,[2] reflects that these IP addresses were located in DeKalb County, Georgia. All of these applications reported that the businesses had ten to 15 employees as of January 2020. The last approximately 59 applications reported that the businesses had ten employees as of January 2020.

e. From on or about June 29, 2020 through on or about July 9, 2020, three IP addresses registered to TRACI PROCTOR, the defendant, at PROCTOR'S DeKalb County, Georgia Residence ("Proctor's IP Addresses"), were used to submit to the SBA approximately 65 EIDL applications for approximately 65 businesses. All of these applications reported that the businesses had ten to 12 employees as of January 2020.

f. Although, as set forth in Paragraph 13, a question on the EIDL applications states that the name or contact information of anyone assisting the applicants in completing the applications is required, none of the EIDL applications referred to in Paragraphs 14(a) through 14(e) included such information.

15. I and other Special Agents of the FBI have interviewed approximately 45 of the Applicants in connection with the Applications. Based upon my personal participation in interviews, and my conversations with and review of reports of other law

---

[2] The WhatIsMyIPAddress.com website cautions that "[t]his information should not be used for emergency purposes, trying to find someone's exact physical address, or other purposes that would require 100% accuracy."

enforcement officers who interviewed Applicants, I am aware that Applicants reported, in sum and substance, among other things, the following:

a.    Zero Applicants reported that they had provided, or were asked to provide any information to ALICIA AYERS, ANDREA AYERS, or TRACI PROCTOR, the defendants, concerning the date they opened any business, the number of people the business employed, or the business's revenue.

b.    Approximately 24 Applicants reported that they had provided their personal identifiers (*i.e.*, name, date of birth and social security number), home address, contact information, bank account information, email address, and bank account number to ALICIA AYERS, the defendant, after she requested that they provide that information so that she could submit on their behalf an application for a loan and/or grant.    Although the EIDL applications submitted to the SBA on behalf of all 24 of these Applicants reflected that they owned a business with more than ten employees, which had been opened on a specified date and had specified revenue during the 12 months prior to the pandemic, zero of these Applicants reported that they had provided, or were asked to provide any information to ALICIA AYERS, or anyone else, concerning the date they opened any business, the number of people the business employed, or the business's revenue.    Only a few of these Applicants reported that they actually owned any business, and zero reported owning a business with the opening date, number of employees, or income reflected on their EIDL applications. Several of these 24 Applicants reported that ALICIA AYERS told them that she would be applying for a grant that was available to homeowners and/or renters.    Most of these 24 Applicants reported that ALICIA AYERS required that they pay her a portion of the $10,000 from the SBA, generally between $2,500 and $5,000, after the funds were electronically deposited into their bank accounts. Of these Applicants, most reported that ALICIA AYERS requested that they pay her in cash.

16.    Records obtained from banks reflect that in or about June 2020 and July 2020, ALICIA AYERS, ANDREA AYERS, or TRACI PROCTOR, the defendants, each received payments from multiple Applicants, typically in amounts ranging from $1,000 to $5,000.

## The Defendants' Phone Numbers and Email Accounts

17.    Based on records obtained from Oath Holdings ("Yahoo") and Google, Inc. ("Google"), I know that:

8

a. A Yahoo email account that was created on or about October 15, 2008 (the "Alicia Ayers Email Account") is subscribed to ALICIA AYERS, the defendant, and is associated with a verified phone number (the "Alicia Ayers Phone").

b. A Google email account that was created on or about June 24, 2008 (the "Andrea Ayers Email Account") is subscribed to ANDREA AYERS, the defendant, and is associated with a phone number (the "Andrea Ayers Phone").

c. A Google email account that was created on or about January 23, 2019 (the "Proctor Email Account") is subscribed to TRACI PROCTOR, the defendant, and is associated with a phone number (the "Proctor Phone")

18. Based on Sprint records, I know that:

a. The Alicia Ayers Phone is subscribed to in the name of ALICIA AYERS, the defendant.

b. The Andrea Ayers Phone is subscribed to in the name of ANDREA AYERS, the defendant.

c. The Proctor Phone is subscribed to in the name of TRACI PROCTOR, the defendant.

**June 24, 2020 Communications Between Alicia and Andrea Ayers**

19. Based on text messages of the Alicia Ayers Phone and Andrea Ayers Phone obtained from Apple, Inc. ("Apple"), I know the following:

a. On or about June 24, 2020, the Alicia Ayers Phone and the Andrea Ayers Phone engaged in the following text message exchange:

Andrea Ayers Phone: Send me what you need from people so I can get the info and have it lined up

Alicia Ayers Phone: Don't tell too many ppl

Hold on it

Andrea Ayers Phone: Ok

Alicia Ayers Phone: Bc it was someone else's hustle I stole

Andrea Ayers Phone: Ok but so what, but I get it

Alicia Ayers Phone:  Na if I'm not paying him it's like
                     stealing from him

Andrea Ayers Phone:  Ok

                     I guess

                     Kinda like cutting his throat, like XL

Alicia Ayers Phone:  Yes lolol

Andrea Ayers Phone:  You can do everybody in queens. We can
                     line them up.

Alicia Ayers Phone:  Yea Queens is a go

                     We need to do them this week

Andrea Ayers Phone:  If you go outside of Mt Vernon it's cool
                     right

Alicia Ayers Phone:  Yes

                     Queens is good

Andrea Ayers Phone:  I got people all over. Give me a script of
                     what they need and I can get wild people

                     I don't think he would have ever even
                     thought about selling food

                     He just started thinking about selling
                     food when I started getting him to help me
                     with catering jobs

                     He didn't even think about cooking til he
                     started working in my kitchen

Alicia Ayers Phone:  First & Last Name
                     Birthday
                     SS
                     Address
                     Email
                     Bank Account Info (Routing & Account
                     Number)

                     This is what they need

Andrea Ayers Phone:  Can you do other states cause [First Name] will hustle the shit out of this

How do you tell people it is a grant and they won't have to pay it back. That is the question that people are asking

Alicia Ayers Phone:  Just like that

It's the loan advance

Meaning you never have to get the loan

They still give you the advance

& the advance you don't have to pay back

Andrea Ayers Phone:  But how do you know they won't ask for it back

Alicia Ayers Phone:  Because it's a grant

Grants are free

### The Defendants' Communications With and Concerning Applicants

20.  Based on my review of text messages and emails of the Alicia Ayers Phone, Andrea Ayers Phone, Alicia Ayers Email Account, and Andrea Ayers Email Account obtained from Apple, Google, and Yahoo, I am aware that from in or about June 2020 through in or about July 2020:

a.  At least several dozen Applicants and other persons sent the Alicia Ayers Phone, the Andrea Ayers Phone, the Alicia Ayers Email Account and the Andrea Ayers Email Account text messages and emails containing the names, dates of birth, social security numbers, addresses, email addresses, and bank account information of Applicants.  My review did not reveal any such communications that contained information about the Applicants' purported businesses' numbers of employees or revenue.

b.  The Alicia Ayers Email Account sent approximately 30 emails to the Proctor Email Account containing the names, dates of birth, social security numbers, addresses, email addresses, and bank account information of Applicants in connection with Applications submitted from Proctor's IP Addresses, the Georgia Medical Practice's IP Address, and other IP addresses located in DeKalb County, Georgia, as described in Paragraphs 14(c) through 14(e).  Again, my review did not reveal any such communications

11

that contained information about the Applicants' purported businesses' numbers of employees or revenue.

        c.   The Proctor Email Account sent approximately 200 emails to the Alicia Ayers Email Account attaching photographs depicting confirmation of the completed submission of Applicants' EIDL applications through the SBA's website, with the bodies of the emails containing only: "Start [date]" and "[number] employees].

## Applicant-1

   21.  Based on records obtained from the SBA and text messages obtained from Apple, I know the following:

        a.   On or about June 22, 2020, at approximately 1:59 p.m., the SBA received an EIDL Application for an Applicant with the last name "Ayers" ("Applicant-1"), whom I believe to be a cousin of ANDREA AYERS, the defendant.  The application was submitted from Relative-1's IP Address, included Applicant-1's phone number (the "Applicant-1 Phone"), stated that Applicant-1 owned a business with 25 employees, and was ultimately denied based upon a determination that it contained incorrect bank account ownership information.

        b.   On or about June 22, 2020, from approximately 5:53 p.m. to 9:48 p.m., the Alicia Ayers Phone engaged in the following text message exchange with the Applicant-1 phone:

| | |
|---|---|
| Alicia Ayers Phone: | Doing yours and [name/nickname-1] now |
| Applicant-1 Phone: | Okay bet |
| | [name/nickname-2] trynna do it too |
| Alicia Ayers Phone: | Ok |
| | Check all emails |
| | Ppl getting emails already |
| Applicant-1 Phone: | [name/nickname-1] got hers but I didn't |
| Alicia Ayers Phone: | Forward it to me [Alicia Ayers Email Address] |
| | Just wait for yours |

```
Applicant-1 Phone:   Okayy

                     [another person's name, date of birth,
                     address, email address, and bank account
                     information]

                     You got [name/nickname-1]?

Alicia Ayers Phone:  Yea that was hers

                     Just keep checking y'all's email

                     I'm abt to do [name/nickname-2]

                     What price did you tell him?

Applicant-1 Phone:   5

Alicia Ayers Phone:  Ok good
```

        c.  On or about June 24, 2020, the Alicia Ayers Phone engaged in the following text message exchange with the Applicant-1 phone:

```
Alicia Ayers Phone:  This one is the eidl

Applicant-1 Phone:   Lol okay bet

Alicia Ayers Phone:  That's the ppp

                     But yea keep sending me anything you find
                     lolol

                     Although 10k is not enough for jail time
                     lol
```

### Applicant-2

22.  Based on records obtained from the SBA and text messages obtained from another Applicant ("Applicant-2"), I know the following:

        a.  On or about June 25, 2020, at approximately 2:00 a.m., the SBA received an EIDL Application for Applicant-2 that was submitted from Alicia Ayers's IP Address.  The application included Applicant-2's phone number (the "Applicant-2 Phone"), and stated that Applicant-2 owned a business with 11 employees.

      b.    Also on or about June 25, 2020, at approximately 2:00 a.m., the Alicia Ayers Phone sent a text message to the Applicant-2 Phone containing a screenshot or photograph depicting confirmation of the completed submission of Applicant-2's EIDL application through the SBA's website, followed by a text message that read: "You're in! Send me any emails you get regarding this to [Alicia Ayers Email Account]".

      c.    The SBA subsequently sent an advance payment of $10,000 to Applicant-2's bank account.

      d.    On or about June 30, 2020, the Alicia Ayers Phone engaged in the following text message exchange with the Applicant-2 phone:

| | |
|---|---|
| Applicant-2 Phone: | Leesh it hit baby! |
| | Ty ty ty |
| Alicia Ayers Phone: | Aye! |
| | I'll come get the money from you just let me know when |
| Applicant-2 Phone: | Ok kool |
| Alicia Ayers Phone: | Also you can get ppl, tell them it's $5k and you get $1k |
| | I just wanted you to get your money first to tell ppl it really works |
| Applicant-2 Phone: | I don't know what u did but that's wasup |
| Alicia Ayers Phone: | It's grant money from Covid |
| | Free money |
| Applicant-2 Phone: | So I give u what 5 of this? |
| Alicia Ayers Phone: | No pay back |
| | Yes |
| Applicant-2 Phone: | li |
| | You got zelle leesh? |

|                      | Is there away to transfer to you |
|----------------------|-----------------------------------|
| Alicia Ayers Phone:  | Na.  I'll just come pick it up. |
|                      | You only in White Plains |
| Applicant-2 Phone:   | U think I should take out the whole ten? Is that possible |
| Alicia Phone:        | Yup! |
|                      | If I were you I'd take all my money out the bank |
| Applicant-2 Phone:   | Yes ok cool |
|                      | That not gonna fuck with me tryna take out so much right? |
|                      | How did you do it? |
| Alicia Ayers Phone:  | Na nothing is gonna fuck with it |
| Applicant-2 Phone:   | If anyone ask you to do it and they don't know u don't put them on I'm only gonna tell niggas that really fuck wit me facts |
|                      | Bc niggas be funny |
| Alicia Ayers Phone:  | I def understand |
| Applicant-2 Phone:   | So ima be funny too |
| Alicia Ayers Phone:  | Laugh straight to the bank |

23.  Based on my participation in interviews of Applicant-2,[3] I am aware that Applicant-2 reported, among other things, in sum and substance, the following:

a.   In late June 2020 Applicant-2 received a phone call from ALICIA AYERS, the defendant, who was a friend.  ALICIA AYERS told him/her about what she described as a $5,000 grant, or "free

---

[3] Applicant-2 has cooperated with law enforcement in the hope of receiving leniency for any criminal exposure Applicant-2 may have had related to the events described herein.  Information Applicant-2 has provided has been deemed reliable and corroborated by other information, including, among other things, email, text messages and records from the SBA.

money," offered by the government, for which he/she was eligible. Applicant-2 told Alicia Ayers he/she was interested and would like to learn more about it.

 b. Alicia Ayers later sent Applicant-2 a text message asking him/her to provide his/her full name, date of birth, Social Security Number, address, email address, and bank account information.

 c. Applicant-2 has never owned a business, and has never had any employees. Alicia Ayers never asked Applicant-2 for information about a business or employees.

 d. After Applicant-2 later received the SBA's $10,000 deposit in his/her bank account, Applicant-2 called Alicia Ayers, who told him/her that there was a $5,000 fee for helping him to get the grant. Applicant-2 did not want to give her half of the money, and asked Alicia Ayers if he/she could give her $2,500 instead; Alicia Ayers was not happy, but agreed to this.

### Applicant-3

24. Based on records obtained from the SBA and information and text messages obtained from the phone of another Applicant ("Applicant-3") (the "Applicant-3 Phone"), I know the following:

 a. On or about June 25, 2020, at approximately 4:18 p.m., the SBA received an EIDL Application for Applicant-3 that was submitted from Relative-1's IP Address. The application included the Applicant-3 Phone number, and stated that Applicant-3 owned a business with 11 employees.

 b. On or about June 29, 2020, the SBA sent an advance payment of $10,000 to Applicant-3's bank account. However, Applicant-3 returned these funds to the SBA.

 c. Applicant-3's phone had the Alicia Ayers Phone Number saved in its contacts under "Alicia." On or about July 1, 2020, the Applicant-3 Phone sent a text message to the Alicia Ayers Phone that read: "Hey Alicia I didn't forget about you I just had so much going on today, do you mind if I bring the money to you tomorrow?" The Alicia Ayers Phone replied: "Hey [nickname]. Sure."

 d. On or about July 5, 2020, the Applicant-3 Phone sent a text message to the Alicia Ayers Phone asking "do you remember what you had put down on the application?" The Alicia Ayers Phone replied "yes." The Applicant-3 Phone asked for a copy

of the application, and the Alicia Ayers Phone responded that it was not retrievable. Applicant-3 then asked ALICIA AYERS if she "remembered which one you clicked so that I can know for myself," and the Alicia Ayers Phone replied "it's the 3rd one"; "I remember"; "I use the same thing on all apps for individuals."

       e.   On or about July 9, 2020, the Applicant-3 Phone sent the following text message to the Alicia Ayers Phone: "I'd like to have my $2500.00 back for filing my paperwork. You have 24 hours. I take cash app or you can Zelle it." Thereafter, the phones exchanged text message communication regarding the logistics of returning $2,500 to Applicant-3. On or about July 25, 2020, the Alicia Ayers Phone sent a text message to the Applicant-3 phone stating "Ok I left your money at my grandmother's bc I won't be around until later."

     25.  Based on my participation in interviews of Applicant-3,[4] I am aware that Applicant-3 reported, among other things, in sum and substance, that:

       a.   A family member of Applicant-3 told Applicant-3 that ALICIA AYERS, the defendant, was an accountant or financial advisor and could help Applicant-3 get money after Applicant-3 lost his/her job in connection with the COVID-19 pandemic. Applicant-3 asked ALICIA AYERS if Applicant-3 qualified for the money and ALICIA AYERS advised that Applicant-3 did qualify.

       b.   At ALICIA AYERS'S request, Applicant-3 provided ALICIA AYERS with Applicant-3's social security and bank account information over the phone, with the understanding that ALICIA AYERS would submit an application for COVID-19-related relief on Applicant-3's behalf. Applicant-3 did not have any business or employees at the time the EIDL application was filed with the SBA. ALICIA AYERS never asked Applicant-3 whether he/she owned a business, and Applicant-3 never told ALICIA AYERS that Applicant-3 owned a business.

       c.   Applicant-3 told another family member, Applicant-7, about the application that ALICIA AYERS was handling for Applicant-3.

---

[4] Applicant-3 does not have a criminal history and has cooperated with law enforcement in the hope of receiving leniency for any criminal exposure Applicant-3 may have had related to the events described herein. Information Applicant-3 has provided has been deemed reliable and corroborated by other information, including, among other things, text messages and records from the SBA.

d. Applicant-3 thereafter received approximately $10,000 in his/her bank account. Applicant-3 told ALICIA AYERS she had received these funds. ALICIA AYERS then told Applicant-3 that Applicant-3 needed to pay her $2,500 in cash, and Applicant-3 did so.

e. Applicant-3 thereafter told other family members about the money and they advised Applicant-3 that it was not legitimate and that Applicant-3 should not accept the money, so Applicant-3 returned the money to the SBA. Applicant-3 also contacted ALICIA AYERS and explained that Applicant-3 did not have a business, so Applicant-3 did not believe it was right to have received the money and demanded that ALICIA AYERS return the $2,500 to Applicant-3, which ALICIA AYERS eventually did.

## **Applicant-4**

26. Based on records obtained from the SBA, Google, and Yahoo, I know the following:

a. On or about June 30, 2020, at approximately 6:58 p.m., the SBA received an EIDL Application for another Applicant ("Applicant-4") that was submitted from one of Proctor's IP Addresses. The application included Applicant-4's phone number (the "Applicant-4 Phone"), and stated that Applicant-4 owned a business with 10 employees.

b. On or about June 30, 2020, at approximately 7:00 p.m., the Proctor Email Account sent an email to the Alicia Ayers Email Account. The email's subject line was the first initial and last name of Applicant-4. The email contained only the following text: "Start 03/04/19" and "10 employees." Attached to the email was a photograph of a computer screen depicting confirmation of the completed submission of Applicant-4's EIDL application through the SBA's website.

c. On or about July 1, 2020, the SBA sent an advance payment of $10,000 to Applicant-4's bank account.

27. Based on my participation in an interview of Applicant-4, I am aware that Applicant-4 reported, among other things, in sum and substance, that:

a. After a close friend ("Individual-1") approached Applicant-4 about applying for a grant, and told Applicant-4 what information she would need to apply, Applicant-4 provided Individual-1 his/her name, date of birth, Social Security Number,

and bank account information.  Applicant-4 knew ALICIA AYERS, the defendant, only through Individual-1.

   b. Applicant-4 does not own a business and does not have any employees.

   c. After Applicant-4 later received the SBA's $10,000 deposit into his/her bank account, he/she paid $2,500 to ALICIA AYERS via CashApp.

### Applicant-5

 28. Based on records obtained from the SBA, emails obtained from Google, and information and text messages obtained from the phone of another Applicant ("Applicant-5"), I know the following:

   a. On or about June 30, 2020, at approximately 7:39 p.m., the SBA received an EIDL Application for Applicant-5 that was submitted from one of Proctor's IP Addresses.  The application included Applicant-5's phone number (the "Applicant-5 Phone") and email address ("Applicant-5's Email Address"), and stated that Applicant-5 owned a business with 11 employees.

   b. On or about June 30, 2020, at approximately 10:41 a.m., the Andrea Ayers Phone, which Applicant-5 had saved in his/her phone as "Andrea" sent the Applicant-5 Phone a text message stating:

> i. First & Last Name
> ii. Birthday
> iii. SS
> iv. Address
> v. Email
> vi. Phone Number
> vii. Bank Account Info (Routing & Account Number).

The Applicant-5 Phone then texted the Andrea Ayers Phone back with the foregoing information.

   c. Applicant-5's June 30, 2020 EIDL application included the identifying, contact and bank account information that the Applicant-5 phone sent to the Andrea Ayers Phone earlier that same day.

   d. On or about July 1, 2020, the SBA sent an advance payment of $10,000 to Applicant-5's bank account.  Applicant-5's EIDL Application for a loan was later denied because:  public records reflected no business, there was no reported revenue

despite the company reporting 11 employees, the business and residence were the same, and Applicant-5's SSN was used as the business's EIN.

       e.   On or about July 2, 2020, the Applicant-5 Phone texted the Andrea Ayers Phone "OOOMMMGGG!!!!!!! IT'S THERE!!!!!!!!!!!!!!" The Andrea Ayers Phone responded that same day with three emoji's of a face laughing with tears. Later that day, the Andrea Ayers Phone sent the Applicant-5 Phone a screenshot of a letter from the Internal Revenue Service ("IRS") with an EIN for Applicant-5.

       f.   On or about July 3, 2020, the Applicant-5 Phone and the Andrea Ayers Phone exchanged text messages about Applicant-5's bank ("Bank-1") account being frozen and Applicant-5's efforts to follow up with Bank-1 to get the account unfrozen. During the course of the communications, Applicant-5 stated that he/she gave Bank-1 a copy of the EIN letter from the IRS that the Andrea Ayers Phone had previously sent.

       g.   On or about July 7, 2020, the Andrea Ayers Phone sent a text message to the Applicant-5 Phone stating, in sum and substance, that she was speaking to Bank-1 about Applicant-5's account, that the bank claimed that Applicant-5 had received a small business loan, and that she told the bank that Applicant-5 was denied the loan and that this money was a grant. Later on July 7, 2020, the Andrea Ayers Phone and the Applicant-5 Phone engaged in the following text message exchange:

| | |
|---|---|
| Andrea Ayers Phone: | So you want to be a massage therapist?🤣🤣🤣🤣 |
| | Yes |
| | Or sell t-shirts |
| | 🤣🤣🤣 |
| Applicant-5 Phone: | Oohh but we told them last week food and was baking from home lol |
| Andrea Ayers Phone: | Or baby sitter! |
| | Ok that's cool |
| Applicant-5 Phone: | Ok |

|  | So make a business card |
| Andrea Ayers Phone: | You bake 🤣 🤣 🤣 🤣 |
| Applicant-5 Phone: | Lol |
| Andrea Ayers Phone: | Or we can make up some letterhead |
| Applicant-5 Phone: | Ok |
|  | What about my paycheck |
| Andrea Ayers Phone: | Or a pic of you in a chef hat |
| Applicant-5 Phone: | Omg |
|  | Lol |
| Andrea Ayers Phone: | They are releasing all of it |
| Applicant-5 Phone: | Ok thanks so much |
| Andrea Ayers Phone: | Check your email[5] |
| Applicant-5 Phone: | Ok |
|  | O wow! |
|  | So bring that? |
| Andrea Ayers Phone: | Yes |

     h.   On or about July 7, 2020, at approximately 6:05 p.m., the Andrea Ayers Email Account sent an email to Applicant-5's Email Address with an invoice attached (the "Invoice").  The Invoice was dated June 17, 2020, contained an image of a woman in a chef's hat, listed Applicant-5's address as the business address, and reflected that a client had purportedly ordered numerous cupcakes.

---

[5] The Andrea Ayers Phone sent this text to the Applicant-5 Phone at approximately 6:06 p.m.

29.   Based on my participation in interviews of Applicant-5,[6] I am aware that Applicant-5 reported, among other things, in sum and substance, that:

a.   On or about June 30, 2020, Applicant-5 was approached by ANDREA AYERS, the defendant, who told Applicant-5, in sum and substance, that ANDREA AYERS and her daughter, ALICIA AYERS, the defendant, could help Applicant-5 apply for a $10,000 grant for what ANDREA AYERS described as a small business, homeowners, and renters loan.   ANDREA AYERS further advised Applicant-5 that once the loan application was "disapproved," Applicant-5 would receive $10,000, would need to pay $2,500 to ALICIA AYERS, and could keep the remaining $7,500.

b.   ANDREA AYERS sent Applicant-5 a text message with a list of information that ANDREA AYERS needed to complete Applicant-5's application, including Applicant-5's name, address, date of birth, email, phone number, social security number, and banking information, which Applicant-5 provided to ANDREA AYERS by text message.

c.   Applicant-5 did not own a business, did not have employees, and never told ANDREA AYERS, the defendant, otherwise.

d.   On or about July 2, 2020, Applicant-5 saw that $10,000 had been deposited into Applicant-5's bank ("Bank-1") account, and Applicant-5 told ANDREA AYERS that he/she had received the money.

e.   ANDREA AYERS told Applicant-5 to send her the $2,500 using Zelle, however, when Applicant-5 attempted to make the transfer, Applicant-5 discovered that his/her bank account at Bank-1 had been frozen.   Bank-1 informed Applicant-5 in sum and substance that it believed the $10,000 deposit was suspicious because the deposit was for a business loan, but Applicant-5's bank account was not a business account.   Bank-1 told Applicant-5 that Applicant-5 would need to prove that Applicant-5 was a business owner before the account would be unfrozen.   Applicant-5 told ANDREA AYERS about the problem with Applicant-5's bank account.   ANDREA AYERS then texted Applicant-5 a screenshot of a

---

[6] Applicant-5 does not have a criminal history and has cooperated with law enforcement in the hope of receiving leniency for any criminal exposure Applicant-5 may have had related to the events described herein.   Information Applicant-5 has provided has been deemed reliable and corroborated by other information, including, among other things, text messages, and records from the SBA.

letter from the IRS with an EIN in Applicant-5's name.  Applicant-5 took a copy of the IRS letter to Bank-1 to try to get Applicant-5's account unfrozen.   ANDREA AYERS further told Applicant-5 to tell Bank-1 that Applicant-5's business was a sole proprietorship and food business that does baking from home.

        f.    Using the Andrea Ayers Email Account, ANDREA AYERS emailed Applicant-5 a copy of an invoice for a cupcake order to make it look like Applicant-5 had a baking business at Applicant-5's home address.  Applicant-5 provided me a copy of the Invoice, which Applicant-5 reported was a fake invoice that Applicant-5 had received from ANDREA AYERS, via the Andrea Ayers Email Account (the "Invoice").

30.  Based on my review of records obtained from Sprint, I know that the Andrea Ayers Phone called Bank-1 several times on or about July 7, 2020.

### Applicant-6

31.  Based on records obtained from the SBA, Google, Yahoo, and photographs of text messages provided by another Applicant ("Applicant-6"), I know the following:

        a.    On or about June 30, 2020, at approximately 8:00 p.m., the SBA received an EIDL Application for Applicant-6 that was submitted from ones of Proctor's IP Addresses.  The application included Applicant-6's phone number (the "Applicant-6 Phone"), and stated that Applicant-6 owned a business with 10 employees.

        b.    On or about June 30, 2020, from approximately 9:16 a.m. through 10:27 a.m., the Alicia Ayers Phone engaged in the following text message exchange with the Applicant-6 Phone:

Applicant-6 Phone:  Hey Lee Lee ! I hope you're well

                      What's the information that I'm supposed to send for the Grant?

Alicia Ayers Phone:  Hey [name/nickname!]

                      Name
                      Birthday
                      SS
                      Address
                      Email
                      Telephone Number
                      Bank name

```
                        Routing number
                        Account number

Applicant-6 Phone:     Okay cool ! So what is it?  Is it a loan?
                       Will I owe anything back?

Alicia Ayers Phone:    It's a grant but I'm applying you for a
                       loan.  The $10k you don't have to pay back

Applicant-6 Phone:     [photograph of handwritten note containing
                       Applicant-6's name, date of birth, Social
                       Security Number, Address, email account,
                       the Applicant-6 Phone number, and
                       Applicant-6's bank, bank account number,
                       and bank account routing number]
```

       c.   Applicant-6's June 30, 2020 EIDL application included the foregoing identifying, contact and bank account information that the Applicant-6 Phone had sent to the Alicia Ayers Phone earlier that same day.

       d.   On or about June 30, 2020, at approximately 8:02 p.m., the Proctor Email Account sent an email to the Alicia Ayers Email Account.  The email's subject line was the first initial and last name of Applicant-6.  The email contained only the following text: "Start 06/03/19" and "10 employees."  Attached to the email was a photograph of a computer screen depicting confirmation of the completed submission of Applicant-6's EIDL application through the SBA's website.

       e.   On or about July 1, 2020, the SBA sent an advance payment of $10,000 to Applicant-6's bank account.

       f.   On or about July 2 and 3, 2020, the Alicia Ayers Phone engaged in the following text message exchange with the Applicant-6 Phone:

```
Applicant-6 Phone:     Hi lee ! I got my money today. How do I
                       pay you and how much?

Alicia Ayers Phone:    Hey [name/nickname].  Are you in NY?

Applicant-6 Phone:     Yes I'm here

Alicia Ayers Phone:    Ok I can pick it up from you & its $2,500

Applicant-6 Phone:     Okay
```

| | |
|---|---|
| Applicant-6 Phone: | Hey Alicia , I wasn't able to make it to the bank today.  Are you ok if I zelle you the money? |
| Alicia Ayers Phone: | I don't have zelle |
| Applicant-6 Phone: | Okay can I give you the cash Monday ? |
| Alicia Ayers Phone: | Yup |

32.   Based on my conversations with and review of a report of other FBI agents who interviewed Applicant-6, I am aware that Applicant-6 reported, among other things, in sum and substance, that:

a.   Applicant-6 was employed as a hair stylist at a spa, and had provided ALICIA AYERS, the defendant, with his/her phone number, email address and bank account through text message, after ALICIA AYERS informed Applicant-6 that there was a grant being given out to homeowners, renters and small business owners.

b.   After Applicant-6 received the $10,000, he/she paid $2,000 to Alicia Ayers in cash.

### Applicant-7

33.   Based on records obtained from the SBA, emails obtained from Google, and information and text messages obtained from the phone of another Applicant ("Applicant-7") (the "Applicant-7 Phone"), I know the following:

a.   On or about July 1, 2020, at approximately 6:31 p.m., the SBA received an EIDL Application for Applicant-7 that was submitted from one of Proctor's IP Addresses.  The application included the Applicant-7 Phone number, Applicant-7's email address (the "Applicant-7 Email Account"), and stated that Applicant-7 owned a business with 10 employees.

b.   The Applicant-7 Phone had the Alicia Ayers Phone saved in its contacts list.  On or about July 1, 2020, the Applicant-7 phone texted the Alicia Ayers Phone, calling the user of the Alicia Ayers Phone "Alicia," stating that Applicant-7 had heard that she was helping people with a grant/loan, and asking whether Applicant-7 and Applicant-7's spouse would qualify, and if so, what Applicant-7 would need to do. The Alicia Ayers Phone replied with a list of information needed, including:  name; birthday; "SS"; address; email; telephone number; bank name; routing number; account number.  The Applicant-7 Phone asked

whether the information would need to be for Applicant-7 and Applicant-7's spouse and noted that the two shared a bank account. The Alicia Ayers Phone replied that Applicant-7 should provide two separate accounts if possible. The Alicia Ayers Phone also texted the Applicant-7 Phone the Alicia Ayers Email Account.   The Applicant-7 Phone later sent a text message to the Alicia Ayers Phone confirming that Applicant-7 had sent the requested information to the Alicia Ayers Email Account.

c.   On or about July 1, 2020, at approximately 4:53 p.m., the Applicant-7 Email Account sent an email to the Alicia Ayers Email Account with the subject: "My Information." The body of the email contained Applicant-7's name, date of birth, Social Security Number, address, prior address, the Applicant-7 Email Account, and bank account information.

d.   Applicant-7's July 1, 2020 EIDL application included the identifying, contact and bank account information that the Applicant-7 Email Account sent to the Alicia Ayers Email Account earlier that same day.

e.   On or about July 5, 2020, the Applicant-7 Phone sent a text message to the Alicia Ayers Phone asking to cancel the EIDL application if it had not already been filed, explaining that Applicant-7 did not "feel comfortable" anymore.   The Alicia Ayers Phone replied that the application had not been submitted.   The Applicant-7 Phone later sent text messages to the Alicia Ayers Phone containing a screenshot of a message from the SBA confirming that the SBA had received an EIDL application in Applicant-7's name, and asking why Applicant-7 was receiving the notification after Applicant-7 had made clear that he/she did not want to do this.   The Alicia Ayers Phone replied "I have an assistant working on the paperwork and data entry for me.   I canceled your application and had no confirmation for you so I didn't think it was submitted. . ."

f.   Applicant-7's EIDL application was ultimately denied by the SBA, without any payment of an advance into Applicant-7's bank account, after Applicant-7 contacted the SBA and reported that ALICIA AYERS, the defendant, had applied in Applicant-7's name without Applicant-7's permission.

34.   Based on my participation in an interview of Applicant-7, I am aware that Applicant-7 reported, among other things, in sum and substance, that:

a.   Applicant-7 learned about the EIDL program from a family member of ALICIA AYERS, the defendant, who had received the

$10,000 grant and told Applicant-7 that she had also submitted applications for two of Applicant-7's other family members, including an individual referred to herein as "Applicant-9," and could likely submit an application for Applicant-7. Applicant-9 told Applicant-7 that he/she had paid ALICIA AYERS $2,500 of the $10,000 grant because ALICIA AYERS had said that she had financial expertise that was helpful in completing the application.

        b.   Applicant-7 contacted ALICIA AYERS to ask whether Applicant-7 and Applicant-7's spouse would qualify for the EIDL program, and if ALICIA AYERS could help submit applications for them. ALICIA AYERS specified the information she would need to complete the applications, and Applicant-7 sent her that information by email.

        c.   Applicant-7 did not own a business, did not have employees, and never told ALICIA AYERS, the defendant, otherwise.

        d.   Shortly after Applicant-7 provided his/her information to ALICIA AYERS, Applicant-7 learned more about the EIDL program, including that it was for business owners. Applicant-7 contacted ALICIA AYERS and informed her that Applicant-7 did not want to submit an application.

        e.   Approximately one week after Applicant-7 filed a complaint with the SBA and police about ALICIA AYERS, the defendant, having filed an application on Applicant-7's behalf without Applicant-7's consent, Applicant-7's spouse received a Facebook message from an account that Applicant-7 and Applicant-7's spouse knew to be associated with ANDREA AYERS, the defendant. Based on my review of a screenshot of the Facebook message, I know that on or about July 15, 2020, the individual identified themselves as "Andrea," and "Alicia's mom," which is consistent with the user being ANDREA AYERS. The message stated in part that ANDREA AYERS needed to talk to someone about the whole situation as "[i]t is jeopardizing a lot of people as well as [Applicant-7]. I just spoke to my lawyer and [Applicant-7] is liable. [He/She] has no idea what [he/she] started."

### Applicant-8

    35.   Based on records obtained from the SBA, Yahoo, Zelle, and a credit union, I know the following:

        a.   On or about July 2, 2020, at approximately 7:04 p.m., the SBA received an EIDL Application for another Applicant ("Applicant-8") that was submitted from one of the Traci Proctor IP Addresses. The application included Applicant-8's phone number

(the "Applicant-8 Phone"), and stated that Applicant-8 owned a business with 11 employees.

        b.   On or about July 2, 2020, at approximately 1:05 p.m., the Alicia Ayers Email Account forwarded to the Proctor Email Account an email sent to the Alicia Ayers Email Account from one of the Applicants, with the subject "Covid 19." The email contained only Applicant-8's name, date of birth, address, social security number, email address, and bank account information.

        c.   Applicant-8's July 2, 2020 EIDL application included the foregoing identifying, contact and bank account information that the Alicia Ayers Email Account had sent to the Proctor Email Account earlier that same day.

        d.   The SBA subsequently sent an advance payment of $10,000 to Applicant-8's bank account.

        e.   From on or about July 9, 2020, through on or about July 18, 2020, a bank account held in the name of by Applicant-8 sent payments totaling approximately $5,000 to a bank account held by ANDREA AYERS, the defendant.

WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of ALICIA AYERS, ANDREA AYERS, and TRACI PROCTOR, the defendants, and that each be imprisoned or bailed, as the case may be.

                                */s/ Philip R. Keane*, cred. #24959
                                Special Agent Philip R. Keane
                                Federal Bureau of Investigation

Sworn to before me by reliable electronic means, specifically FaceTime, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this 18th day of March, 2021  (via FaceTime)

THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK